ORIGINAL

JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :     **INFORMATION**

        - v. -                    :     22 Cr. _____ (PKC)

FRANK OKUNAK,                     :

        Defendant.                :

- - - - - - - - - - - - - - - - - x



22 CRIM 410

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL 27 2022

### COUNT ONE
**(Wire Fraud)**

The United States Attorney charges:

### OVERVIEW

1.   For nearly a decade, FRANK OKUNAK, the defendant, who occupied the roles of chief financial officer and later chief operating officer of one of the world's leading global public relations firms (the "PR Firm"), embezzled over $16 million from the PR Firm and, ultimately, the shareholders of the PR Firm's publicly traded parent corporation. OKUNAK used the embezzled funds to finance his personal lifestyle and his own private business ventures. Moreover, OKUNAK concealed and facilitated his theft by preparing and causing others to prepare materially false accounting books and records, including invoices and payment records that falsely described expenditures as having been undertaken for the benefit of the PR Firm, when, in truth and in

1

fact, the funds were used for OKUNAK's personal benefit or for the benefit of his personal business associates.

## BACKGROUND

2.      At all times relevant to this Information, FRANK OKUNAK, the defendant, was a senior executive of the PR Firm. The PR Firm was based in Manhattan, New York but maintained offices in major media, business, and government capitals around the world. As of 2020, the PR Firm employed over 4,000 people and generated revenues of over $800 million.

3.      FRANK OKUNAK, the defendant, became an employee of the PR Firm in 1995. From 2009 to 2019, OKUNAK was the chief financial officer ("CFO") of the PR Firm. In approximately 2013, OKUNAK was promoted to the role of Chief Operating Officer ("COO") of the PR Firm. As CFO and then COO, OKUNAK was one of the PR Firm's most senior employees.

4.      The PR Firm was a wholly owned subsidiary of a publicly traded advertising firm (the "Corporate Parent"). The Corporate Parent was an issuer of a class of securities registered with the United States Securities and Exchange Commission (the "SEC") pursuant to Section 12(b) of the Securities Exchange Act of 1934, which shares were listed on the New York Stock Exchange. As such, the Corporate Parent was required, pursuant to Section 13(b)(2)(a) of the Exchange Act [15 U.S.C. § 78m(b)(2)(a)], to make and keep

books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of the Corporate Parent. The Corporate Parent was also required, pursuant to Section 15(d) of the Exchange Act, to file periodic reports with the SEC.

5.    The PR Firm's books, records, and accounts were consolidated into the financial statements that the Corporate Parent filed with the SEC. Accordingly, the PR Firm's expenditures were dispositions of the Corporate Parent's assets. At all times relevant to this Information, the PR Firm maintained a system of books and records that documented, for each expenditure by the PR Firm, the corporate purpose for which the expenditure was made, the nature of the goods purchased or services procured, and the identity of the employee or officer of the PR Firm who approved the expenditure. Information from this system was used in preparing the financial statements of the PR Firm and, ultimately, those of the Corporate Parent that were filed with the SEC.

6.    In connection with his employment, FRANK OKUNAK, the defendant, was regularly required to disclose to the Corporate Parent whether he or any member of his family or household "[held] a significant ownership interest in or [held] a significant position with any [Corporate Parent] vendor." OKUNAK was also required to disclose whether within the past 24 months, he had "referred any business to any [Corporate Parent] vendor" with which

3

he had such a relationship. At all times relevant to this Information, OKUNAK consistently answered "no" to these questions.

7.    FRANK OKUNAK, the defendant, was also required each quarter to sign sub-certifications addressed to executives and accounting professionals at the Corporate Parent regarding his knowledge of fraud or internal controls violations at the Corporate Parent and/or the PR Firm. OKUNAK was made aware that the Corporate Parent relied upon his responses to these questions to maintain accurate books and records and to fairly present its financial statements. Each quarter, OKUNAK represented that he had no knowledge of any "payments . . . which were deliberately disguised in the accounting records," that "any violations . . . of laws or regulations have been reported to the [the Corporate Parent's] Chief Risk Officer," and that all transactions with related parties had been properly disclosed to the Corporate Parent's accounting team.

## THE EMBEZZLEMENT SCHEME

8.    From at least in or about 2011 through in or about July 2020, FRANK OKUNAK, the defendant, embezzled more than $16 million from the PR Firm. OKUNAK used his authority as an officer of the PR Firm to cause the PR Firm to make unauthorized payments for OKUNAK's personal and business ventures unrelated to the activities of the PR Firm or the Corporate Parent. In this manner,

OKUNAK used the PR Firm's assets to provide the start-up capital for his personal, independent business ventures, to purchase tickets and luxury boxes at sporting events, and even to cover donations to his alma mater. To hide the illicit nature of these expenditures, OKUNAK frequently prepared or caused others to prepare false or misleading invoices and other documentation to suggest, falsely, that the funds were used for legitimate corporate purposes. A few examples are described below:

a. In 2012, OKUNAK caused the PR Firm to issue a check for over $20,000 to Rutgers University by submitting fraudulent expense documentation indicating that the funds would be used to compensate the university for an "Asia/Pac Economic Survey" conducted on behalf of the PR Firm. In reality, the funds were applied to an outstanding tuition bill that OKUNAK himself owed for classes that he had enrolled in at the university. OKUNAK subsequently sought a refund of the $20,000 payment and retained the funds for his personal use.

b. From in or about 2016 to in or about 2019, OKUNAK authorized fraudulent payments of approximately $2 million to a firm ("Firm-1") owned and managed by a personal business associate of OKUNAK's ("Associate-1") and in which OKUNAK himself had an ownership interest. The misappropriated money was used as operating capital for Firm-1, and the PR Firm received no benefit in exchange for these payments. In order to hide the true purpose

5

of the payments, OKUNAK submitted false invoices to the PR Firm. For example, in June 2016, Associate-1 sent OKUNAK a $92,000 invoice for "June 2016 [Firm-1] Operating Expenses." Before submitting the invoice to the PR Firm's accounting department for processing, OKUNAK altered the description on the invoice to indicate, falsely, that it demanded payment for work performed for the PR Firm, specifically "Mapping of social media event trends and user engagement devices including the combustion engine interface and trends related to user technology (i.e. LinkedIn, FB)."

c. From 2015 to 2018, OKUNAK also directed a total of approximately $1.3 million in payments from the PR Firm to another firm owned by Associate-1 ("Firm-2"). Like Firm-1, Firm-2 did not provide any benefit to the PR Firm, and the stolen money was used to fund Firm-2's operations.

d. Firm-1 was not the only company in which OKUNAK held an interest that received embezzled funds. From in or about 2017 to in or about 2020, OKUNAK caused the PR Firm to pay over $2.5 million to a third firm ("Firm-3") of which OKUNAK was the principal manager. Like Firm-1 and Firm-2, Firm-3 did not provide any benefit to the PR Firm, and the misappropriated money was used to fund Firm-3's operating expenses.

e. In addition to direct payments to Firm-3, OKUNAK caused the PR Firm to pay outside vendors for services that were provided

to Firm-3 that did not benefit the PR Firm. For example, in or about April 2018, a vendor of Firm-3 (the "Vendor") sent OKUNAK two invoices in the amount of $78,750 and $135,833.33, respectively, for what the invoices described as a "[Firm-3] event." OKUNAK altered these invoices to remove any reference to Firm-3 and then submitted them for payment by the PR Firm.

f. Between 2011 and 2019, OKUNAK improperly charged to the PR Firm over $3 million in fees and expenses associated with luxury suites and tickets to professional sporting events.

g. In or about 2017, OKUNAK caused the PR Firm to pay $4,940 in fees to promote one of his personal businesses on a podcast.

## Statutory Allegations

9.     From at least in or about 2011, up to and including in or about July 2020, in the Southern District of New York and elsewhere, FRANK OKUNAK, the defendant, knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, using emails and other interstate communications, some of which transited through the Southern

District of New York, OKUNAK engaged in a scheme to embezzle over $16 million from the PR Firm for his own benefit and for the benefit of his personal business associates.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
### (Falsification of Corporate Books and Records)

The United States Attorney further charges:

10.   The allegations contained in paragraphs 1 through 8 of this Information are repeated and realleged as if fully set forth herein.

11.   From at least in or about 2011, up to and including in or about July 2020, in the Southern District of New York and elsewhere, FRANK OKUNAK, the defendant, willfully and knowingly, falsified and caused to be falsified books, records, and accounts, which were required, in reasonable detail, to accurately and fairly reflect the transactions and dispositions of the assets of an issuer of a class of securities registered pursuant to Title 15, United States Code, Section 78l, namely, the Corporate Parent.

(Title 15, United States Code, Sections 78m(b)(2),
78m(b)(5) & 78ff; Title 18, United States Code,
Section 2.)

## FORFEITURE ALLEGATIONS

12.   As a result of committing the offenses alleged in Counts One and Two of this Information, FRANK OKUNAK, the defendant, shall forfeit to the United States, pursuant to Title 18, United States

Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

<u>Substitute Assets Provision</u>

13. If any of the above-described forfeitable property, as a result of any act or omission by the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

FRANK OKUNAK,

Defendant.

## **INFORMATION**

22 Cr. _____ (PKC)

(Title 15, United States Code, Sections
78m(b)(2), 78m(b)(5) & 78ff; Title 18, United
States Code, Sections 2 & 1343.)

DAMIAN WILLIAMS
United States Attorney

*Filed 7/27/2022*

*Judge Castel /fn*